# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

**No. 23-7132**

**September Term, 2024**

FILED ON: MAY 30, 2025

B.D., BY AND THROUGH HIS PARENTS, ANNE AND BRANTLEY DAVIS,
           APPELLANTS

v.

DISTRICT OF COLUMBIA,
           APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:13-cv-01223)

———

Before: HENDERSON and WALKER, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*

## <u>J U D G M E N T</u>

We considered this appeal on the record before the United States District Court for the District of Columbia and the briefs of the parties. *See* Fed. R. App. P. 34(a)(2); D.C. Cir. R. 34(j). We fully considered the issues and determined that a published opinion is unnecessary. *See* D.C. Cir. R. 36(d). It is

**ORDERED AND ADJUDGED** that the district court's orders be **AFFIRMED IN PART** and **REVERSED IN PART**.

\*     \*     \*

Anne and Brantley Davis have a son, B.D., with special needs. They say that their son should have received certain services from the District of Columbia under the Individuals with Disabilities Education Act. Because we disagree, we affirm the district court on that question.

Separately, the Davises claim that the district court erroneously denied them attorneys' fees even though they secured an administrative consent order requiring the District to reimburse them for certain expenses. Because the District has waived any contrary argument, we reverse and remand regarding that claim.

# I

The Davises' son, B.D., has autism. For two years, he could not attend school. Instead, the District paid for one-on-one tutoring at home, along with two "related services" — occupational therapy, and speech and language services.[1]

In 2011, the District attempted to place B.D. in a school. But the school soon dismissed B.D. After his dismissal, the District proposed an "individualized education program." *See* 20 U.S.C. § 1414(d)(1)(A), (d)(2)(A). That proposed program would have placed B.D. in a different school.

The Davises thought the District's new school placement was inappropriate for B.D. So they filed an administrative challenge to his 2011 individualized education program. Meanwhile, instead of sending B.D. to the District's proposed school, the Davises chose to continue B.D.'s education at home, providing one-on-one tutoring and occupational therapy at their own expense.[2]

The Davises' administrative challenge succeeded: In March 2012, the hearing officer concluded that the District had denied B.D. his right to a free and appropriate public education.

That March 2012 decision did several things relevant to this appeal. It ordered the District to reimburse the Davises for the one-on-one tutoring and occupational therapy that they had provided on their own dime. JA 50. It also directed the District to provide B.D. with a certain amount of occupational therapy as compensatory education. *Id.* And it ordered the District to reconvene B.D.'s individualized education program team to make certain assessments and to "determine appropriate" interim services for B.D. "to receive until assessments are completed." *Id.* "Such services," the decision specified, "shall include 1:1 home instruction for two hours per day, five days a week." *Id.* To sum up, the March 2012 decision required (1) reimbursement for past expenses, (2) a certain amount of occupational therapy, (3) one-on-one tutoring going forward, and (4) a determination as to any other "appropriate" interim services.

The team developed new individualized education programs later in 2012. But the Davises were not satisfied. So they filed another administrative complaint, which challenged B.D.'s 2012 individualized education programs.

During this second administrative challenge, the Davises moved the hearing officer to establish B.D.'s "current educational placement" for the purpose of the Individuals with Disabilities Education Act's "stay-put" provision. 20 U.S.C. § 1415(j). That provision says that "the child shall remain in [his] then-current educational placement" during the administrative

---

[1] 20 U.S.C. § 1401(26)(A) ("The term 'related services' means . . . such developmental, corrective, and other supportive services [ ] including speech-language pathology . . . , psychological services, physical and occupational therapy . . . designed to enable a child with a disability to receive a free appropriate public education . . . ."). The District also authorized B.D. to receive another related service — psychological services — but no appropriate provider was available.

[2] Parents "who disagree with [their child's] proposed" individualized education program may "pay for what they consider to be the appropriate placement" and receive "retroactive reimbursement" if a hearing officer later agrees. *Burlington School Committee v. Massachusetts Department of Education*, 471 U.S. 359, 370 (1985).

2

proceedings — in other words, that the child should 'stay put' — "unless the State or local educational agency and the parents otherwise agree." *Id.*

The Davises and the District agreed that B.D.'s "then-current educational placement" meant his placement in March 2012 when the hearing officer ruled in favor of the Davises on their first administrative challenge. But the parties disagreed about the scope of B.D.'s "then-current educational placement" in March 2012. Ultimately, the hearing officer concluded that B.D.'s "then-current educational placement" was his home program — consisting of only the one-on-one tutoring and occupational therapy that the Davises had provided B.D. out-of-pocket while challenging the 2011 individualized education program.[3] That is because those were the only two services that the hearing officer had mentioned and approved in the March 2012 decision. *See* JA 42-45, 50; 34 C.F.R. § 300.518(d) ("If the hearing officer in a due process hearing . . . agrees with the child's parents that a change of placement is appropriate, that placement must be treated as an agreement" for § 1415(j) stay-put purposes).

The Davises then brought this dispute to district court, and the district court agreed with the hearing officer. *B.D. ex rel. Davis v. District of Columbia*, 2023 WL 6037202, at *4-5 (D.D.C. Sept. 15, 2023).

The Davises also brought to the district court a claim about attorneys' fees incurred during a dispute about who should pay for a psychological evaluation that B.D. received. The District initially refused to reimburse the Davises for the cost of the evaluation. But after the Davises filed an administrative complaint, the parties resolved the matter via a consent order entered by the hearing officer, which directed the District to reimburse the Davises $1,000 within 45 days of receiving certain documentation from the Davises. In district court, the Davises sought to recover an estimated $10,000 in attorneys' fees as the "prevailing party" in the dispute that led to that consent order, but the district court dismissed their claim. *See* 20 U.S.C. § 1415(i)(3)(B)(i)(I); *B.D. v. District of Columbia*, 66 F. Supp. 3d 75, 79-80 (D.D.C. 2014).

The Davises appealed both decisions by the district court — the stay-put decision and the attorneys' fees decision.

## II

The first issue on appeal concerns the Act's stay-put provision. It guarantees that a child can stay in his "then-current educational placement" while his rights are litigated. 20 U.S.C. § 1415(j).

That provision "is not a sword to effectuate affirmative remedies." *Davis ex rel. Davis v. District of Columbia*, 80 F.4th 321, 329 (D.C. Cir. 2023) (cleaned up), *cert. denied sub nom. Davis v. District of Columbia*, 144 S. Ct. 2684 (2024). Rather, it "functions as an automatic statutory injunction" that preserves the "educational status quo" while parents litigate their child's

---

[3] Originally, in 2013, the hearing officer concluded that B.D.'s "current educational placement" based on the March 2012 decision was *only* the 1:1 home instruction — no occupational therapy. But after eight years of procedural morass, the hearing officer decided in 2021 that his 2013 order "should have included" occupational therapy. JA 427-28, 30.

3

educational needs. *Id.* at 324, 329. That is why the provision is titled, "Maintenance of current educational placement." 20 U.S.C. § 1415(j).

What the stay-put provision means for B.D. depends on the status quo at the time of the hearing officer's March 2012 decision. In that decision, the hearing officer agreed that B.D.'s then-current home program — one-on-one tutoring and occupational therapy — was appropriate and ordered the District to reimburse the Davises for having provided those services out-of-pocket. The hearing officer also directed B.D.'s team to determine and provide "appropriate" interim services. JA 50. It specified that those services should include at least the one-on-one tutoring that B.D. had been receiving.

The Davises interpret the hearing officer's directive to mean that B.D.'s "then-current educational placement" included a variety of additional "appropriate" services beyond one-on-one tutoring and occupational therapy — even though B.D. was not receiving those additional services at that time. They point to the District's belated provision of certain services as "compensatory education" in July 2012 and the 2012 individualized education program's inclusion of those services as evidence that the District deemed them "appropriate." *Id.* at 92.

We disagree. Because one-on-one tutoring and occupational therapy were the only services the hearing officer approved in the March 2012 decision, B.D.'s "then-current educational placement" included only those services. True, the hearing officer directed B.D.'s team to determine what other services were "appropriate" and to provide those services *in the future*. But for the present, the hearing officer did not agree to any services other than the one-on-one tutoring and occupational therapy that B.D. was already receiving. *See id.* at 50; 34 C.F.R. § 300.518(d); *accord E. E. ex rel. Hutchison-Escobedo v. Norris School District*, 4 F.4th 866, 872 (9th Cir. 2021) ("*current* educational placement" does not mean "*future* educational placement" (emphasis added)).[4]

We therefore affirm the district court's decision about the stay-put provision.

**III**

The second issue on appeal concerns the Davises' claim for attorneys' fees, which arose separately from their stay-put claim.

District courts in this circuit are divided over whether a favorable administrative consent order renders a plaintiff a "prevailing party" under the Individuals with Disabilities Education Act's fee-shifting provision. *See* 20 U.S.C. § 1415(i)(3)(B)(i)(I); *compare, e.g.*, *B.D. v. District of Columbia*, 66 F. Supp. 3d 75, 79-80 (D.D.C. 2014) (Leon, J.) (on appeal here), *and Thompson v. District of Columbia*, No. 12-CV-103, 2013 WL 12106870, at *29-32 (D.D.C. July 1, 2013) (Kay, M.J.), *report and recommendation adopted as modified*, No. 11-CV-1726, 2013 WL 12108061 (D.D.C. July 24, 2013) (Contreras, J.), *with Arthur v. District of Columbia*, 106 F. Supp. 3d 230,

---

[4] The Davises have made no timely argument that they and the District have "otherwise agree[d]" to change B.D.'s placement to add additional related services since the March 2012 decision. 20 U.S.C. § 1415(j). So we consider only the educational placement established by the hearing officer's agreement with the Davises in the March 2012 decision.

4

233-34 (D.D.C. 2015) (Contreras, J.), *and Joaquin v. Friendship Public Charter School*, 188 F. Supp. 3d 1, 5-9 (D.D.C. 2016) (Contreras, J.). But we need not resolve that question here. The District has abandoned the argument that it made before the district court and now joins the Davises in asking us to reverse and remand for a determination of reasonable attorneys' fees.

Because the District has confessed error, effectively waiving any contrary argument, we reverse and remand. *See American Security & Trust Company v. Thompson*, 42 App. D.C. 382, 382-83 (D.C. Cir. 1914) (reversing based on appellees' confession of error); *United States v. Singer*, 132 F.3d 1482 (Table), 1997 WL 812459, at *2 (D.C. Cir. 1997) (unpublished) ("the government confesses error, and we therefore reverse").

## IV

For these reasons, we **AFFIRM** the district court's decision about the stay-put provision and **REVERSE** the district court's decision about attorneys' fees. We **REMAND** for the district court to determine the amount of fees to be paid.

\*　　　\*　　　\*

This disposition is unpublished. *See* D.C. Cir. R. 36(d). We direct the Clerk to withhold this mandate until seven days after resolution of a timely petition for panel or en banc rehearing. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(a)(1).

### <u>Per Curiam</u>

**FOR THE COURT:**
Clifton B. Cislak, Clerk

BY:　/s/
Daniel J. Reidy
Deputy Clerk

5